# THE STATE OF NORTH DAKOTA v. ANDREW. STABER.

(129 N. W. 104.)

**Criminal Law — Evidence — Harmless Error.**

1. The admission of incompetent evidence which could not have prejudiced the defendant, the facts having been established by other undisputed and competent testimony, is not ground for reversal.

**Criminal Law — Intoxicating Liquors — Evidence — Freight Bills.**

2. A record describing articles of freight received at a local station, billed to defendant and another, and delivered to defendant with his signature acknowledging receipt of such articles, is competent evidence tending to show the nature of the articles so receipted for.

**Instructions.**

3. The charge as a whole states the law correctly. Hence no error was committed in refusing defendant's requests for instructions.

**Criminal Law — Remarks of State's Attorney.**

4. Remarks of the state's attorney in his address to the jury, as set forth in the opinion, *held*, not prejudicial.

Opinion filed December 9, 1910.

Appeal from District Court, Richland county; *Honorable Frank P. Allen*, J.

Action by The State of North Dakota against Andrew Staber. From an order denying defendant's motion for a new trial, defendant appeals.

Affirmed.

*Purcell & Divet,* for appellant.

*C. E. Wolfe,* State's Attorney, *Jos. Forbes,* Assistant State's Attorney, and *Andrew Miller,* Attorney General, for respondent.

CARMODY, J.  The defendant was informed against jointly with one Leonard Staber for keeping and maintaining a common nuisance in violation of the prohibition law, on certain premises in the village of East Wyndmere, in Richland county, on the first day of July, 1909, and thence continuously from day to day until the 18th day of August, 1909. He demanded and procured a separate trial, which resulted in his conviction. In due time a motion for a new trial was made, and

20 N. D.—35.

denied. From the order denying the motion for a new trial, defendant appeals to this court.

On the trial Frank Beaver testified that he peddled and sold beer for the defendant. Other witnesses testified to having drank beer on the premises and seeing others drinking there. Also to seeing the defendants on the premises, and one witness testified to being served with beer by the defendant. The state then introduced C. S. Kimber, station agent of the Northern Pacific Railroad Company at Wyndmere, who testified that he knew the defendant; that in the conduct of the business of his office he kept books in which he noted the receipt and delivery of express and freight. Had the books with him which showed the delivery of freight and express for the month of July and the first eighteen days in August, 1909. Thought he had a record of shipments delivered to defendant personally between July 1st and August 18th, 1909. Exhibits C, D, E, and F are freight receipts. In the railroad and express business they are used for the consignee's receipt, and are signed by the party to whom the goods are delivered, that is, the consignee. Witness examined the signature at the bottom of each of the exhibits, and could not be sure whether the handwriting was Girder's or Staber's. About the time these instruments bear date there was a firm or partnership, doing business in Wyndmere by the name of Girder and Staber. He was then asked the following question: "Do you know who the Staber of that firm was?"

The question was objected to by the defendant as calling for a conclusion of the witness as to whether or not there was such a firm, and it assumes the fact; that the witness has not shown himself competent to testify as to the character of any concern doing business as Girder & Staber, or what their relations were.

The objection was overruled, to which the defendant excepted.

"A. Yes, sir. Q. Which Staber was it? A. Andrew Staber, the defendant sitting behind Mr. Divet."

The receipts marked C, D, E, and F were made by the agent's helper, did not come with the goods, waybills come with goods. There is a memorandum made on these receipts or on the waybills; that memorandum is found on the left hand side of the bill. The bills are numbered consecutively for a month. The yellow papers attached to

the back of three of these exhibits are bills of lading. They did not come with the goods. They are for record, to show the delivery to the right party. Did not have any independent recollection of the transactions that were embodied in these papers except what the papers showed. He was required to keep such records.

The plaintiff offered in evidence Exhibit E. The defendant objected to the introduction of Exhibit E, upon the ground that it was incompetent, irrelevant, and immaterial; no proper foundation laid; no proof of any fact recited therein, and if intended as an admission upon the part of the defendant, no foundation has been laid by showing what knowledge of the same was ever brought home to the defendant; and upon the further ground that it was not the best evidence, having been made up by the witness from other memoranda, which memoranda would be the best evidence. In support of this evidence the defendant asked leave of the court to examine the witness preliminary as to the exact manner of making up the exhibit, which request was granted.

Preliminary examination by Mr. Divet:

"Q. Mr. Kimber, the parts of the exhibit that appear in writing as distinguished from the parts in printing were placed upon that paper in the office when the goods were delivered at Wyndmere were they not? A. Yes, sir. The entries upon Exhibit E were not made by me. They were made by Elmer Sheder; he was employed in the office of the railway company, at Wyndmere. He got the information from which the exhibit is made up from the waybill from which the goods were received. The waybill is a paper containing upon it in writing matters purporting to describe the goods that are shipped, to give the weight thereof, the rate of freight, and the amount of freight,— exhibits of the character of Exhibit E; and Exhibit E itself is but a copy taken from the waybill of the parts that appear in writing.

"Q. Whether or not the things upon Exhibit E were correctly copied, you have no means of knowing have you? A. Yes, sir.

"Q. As a matter of fact the party making the exhibit resorts to the waybill for his information, doesn't he? A. Yes, sir.

"Q. And without the waybill the party would have no means of putting upon the Exhibit E that I am referring to the characters and

writing that are made upon it; that is, he got his information from it? A. Yes, sir.

"By the Court: What means of knowledge have you as to the correctness of Exhibit E that it has been correctly copied from the waybill?

"A. After the work is done; after they are made out, I look them over.

"Q. Do you look them over? A. Certainly.

"Q. And compare them? A. Yes."

Examination continued by Mr. Divet:

"I could not remember that I ever looked over and compared this particular waybill, Exhibit E, that we are referring to, but we look them all over.

"By the Court: You say you looked this one over? A. I expect I did.

"2. Are you prepared to say you did? A. Yes, sir. The waybills from which this copy is made are sent to St. Paul to the offices of the railroad company in St. Paul."

By Mr. Divet:

"The defendant now adds to the objection made the specific objection that it appears that the exhibit is not the best evidence, and no foundation has been laid for the introduction of secondary evidence by attempting to procure the original of which the exhibit purports to be a copy, and upon the further ground that there is no showing that the original waybill itself contained a correct description of the articles referred to in the exhibit. The objection is overruled, to which the defendant excepts.

"The state now offers in evidence Exhibits C, D, and F, with the papers attached to the back of each.

"The defendant objects to Exhibits C, D, and F upon all the grounds urged to the objection of Exhibit E. It is stipulated that the same record may be considered as made to each of said exhibits as made by the preliminary examination as to Exhibit E. To the papers attached to each of the three exhibits last offered, the defendant objects upon the ground they are irrelevant, immaterial, and incompetent; no proper foundation laid, and in no wise binding upon the defendant.

"The objection is overruled, to which the defendant excepts."

On cross-examination the witness testified that he examined the signature at the bottom of the four exhibits that have been offered in evidence,—the signature of Girder & Staber. Could not say which one wrote them. Knew one of them did, because he did not deliver the goods to the other party; had no recollection of delivering this particular shipment. Freight is sometimes delivered by others except witness. Beer shipments or liquor shipments are not delivered to people other than the consignee. He always instructed his helper not to deliver liquor or beer shipments to people other than the consignee, but could not swear whether he did or not. The firm of Girder & Staber went out of existence some time about July 1st, 1909.

W. M. Baumgartner, station agent of the Soo road, at Wyndmere, called as a witness, testified that he had charge of the receipt and delivery of freight and express. Kept records that showed the receipt and delivery of freight and express. Had a record of the delivery of shipments of express from July 1, 1909, to August 18, 1909. There was no record of any express delivered to defendant during the time, but there was a record of a delivery to Girder & Staber during that time. Heard the testimony of Kimber as to the way business was done at the Northern Pacific office. The Soo station and the Northern Pacific station were together in the same building. Papers were then marked Exhibits H, J, and K. Exhibits H, J, and K were freight receipts. These receipts were signed by the consignee. Had no independent recollection with reference to any of these shipments mentioned in the exhibits. All he knew about them was what the record showed. Have done business with Andrew Staber to a certain extent. Never saw him sign his name. Had seen him sign the name of Girder & Staber. Had seen him sign Exhibits H, J, and K. Collected the freight charged on these exhibits from defendant Staber. Exhibits H, J, and K were offered in evidence by the state, and objected to upon all the grounds urged to Exhibits C, D, E, and F when offered. Objection overruled. Defendant excepted. Exhibit C is a freight receipt dated July 2, 1909, for a cask of beer, weight 250 pounds, consignor G. Heileman Brewing Company, date of delivery July 3, 1909. Signature of party authorized to receipt for freight,—Guyter-Staber. Bill of lading attached to back. Acknowledges the receipt from the G. Heileman Brewing Co. Exhibits D, E, and F

are the same as Exhibit C except as to dates and numbers. The shipments as shown by Exhibits C, D, E, and F were sent C. O. D. by freight. Exhibits H, J, and K were receipts of the same character, except that no yellow papers were attached to them; they were signed Girder & Staber, by defendant; were admitted in evidence, and no error is assigned upon them.

Appellant assigns as error the overruling of his objection to the introduction in evidence of Exhibits C, D, E, and F, and each thereof. In this connection we will first consider the error assigned in the court permitting witness Kimber to testify to a partnership relation between one Guyter or Girder and the defendant. The testimony shows that either defendant or Girder signed the name Guyter-Staber to the exhibits admitted in evidence. The witness, without objection, testified that at the time exhibits C, D, E, and F bore date, there was a firm or partnership doing business in Wyndmere by the name of Girder & Staber. He was then asked: "Do you know who the Staber of that firm was?" The defendant's objection was that the question called for a conclusion of the witness, as to whether there was such a firm, and assumed that fact. Also that the witness had not shown himself competent to testify as to the character of any concern doing business as Girder & Staber, or what their relations were. This objection was overruled, and the witness answered: "Andrew Staber, the defendant, sitting behind Mr. Divet." There is no error in this ruling. The witness had already testified without objection that there was such a partnership, and if he knew, it was not error to allow him to testify that the defendant was the Staber of that firm.

Whether it is error to admit Exhibits C, D, E, and F in evidence, appellant is not, in our opinion, prejudiced by the admission of such exhibits. Exhibits H, J, & K are receipts of the same character. Exhibits H, J, and K, are concededly signed by the defendant, and are under the ruling in the case of State v. Dahlquist, 17 N. D. 40, 115 N. W. 81, binding upon the defendant, as admissions by him of the receipt of the articles therein described. There are several exhibits admitted in evidence, some of which are concededly competent, signed by the defendant. The jury were instructed that the exhibits signed by the defendant might be considered by them as admissions of the

receipt of the goods as enumerated in said receipts or waybills by the defendant, while the exhibits not signed by him were not binding upon him, and were not admissions by him of the receipt of such goods. In view of these instructions, the presumption is that the jury only considered the exhibits signed by the defendant as admissions against him. There is no complaint that the evidence is insufficient to justify the verdict. Aside from the exhibits complained of, the evidence is abundantly sufficient to justify such verdict. With these exhibits out of the case the jury could have found no other verdict than the one found. The defendant offered no testimony, and the uncontradicted testimony of the state, aside from the exhibits complained of, clearly shows that the defendant is guilty of the offense charged in the information.

In People v. Gonzalez, 35 N. Y. 49, the defendant was convicted of murder, and appealed to the supreme court, where the conviction was reversed. On a writ of error sued out by the state the judgment of the supreme court was reversed and the conviction affirmed. The court says: "The circumstances which were established by evidence, confessedly competent, were so conclusive as to the guilt of the prisoner, that no honest jury could refuse to convict him of the crime. To acquit him would be to shield guilt from justice and deny the protection of law to the innocent. If, therefore, the court below was right in holding that the judge erred in admitting additional evidence tending to the same conclusion, we think it was clearly wrong in reversing the conviction; for, upon the facts disclosed, the supposed error could work no legal injury to the prisoner. As it was shown, beyond all question, by undisputed and competent proof, that the accused was one of the murderers, we are under no legal or moral obligation to assume that the jury might have rendered a false verdict of acquittal but for the erroneous admission of other and needless evidence. . . . The reception of illegal evidence is presumptively injurious to the party objecting to its admission; but where the presumption is repelled, and it clearly appears on examination of the whole record, beyond the possibility of rational doubt, that the result would have been the same, if the objectionable proof had been rejected, the error furnishes no ground for reversal.

"Many of the earlier cases in this state favored a departure from

the English rule on this subject, and maintained that it was impossible to determine whether the evidence improperly received might not have had a controlling influence upon the jury. . . . The later decisions have modified this doctrine, in harmony with the general current of English and American authority, and we think they rest upon sound principles. The intendment is that an error of the judge, whether in the admission of evidence, or in his instructions to the jury, was prejudicial to the party; but there is no more difficulty in the one case than in the other, in determining, upon the whole record, whether, in the particular case, such intendment is repelled. Where, as in the present case, it is apparent and obvious that the supposed error did not, and could not, affect the result, nor work either injury or injustice to the party accused, we think it does not call for a reversal of the conviction." To the same effect, see Rice on Evidence, Vol. 3, 244, and subdivision C on page 418.

In State v. Chase, 17 N. D. 429, 117 N. W. 537, 17 A. & E. Ann. Cas. 520, in which defendants were convicted of keeping a gambling resort, the court says: "The defendants were arrested while card games were going on at the place where both defendants were at the time. One of the players had a conversation with one of the persons who accompanied the officer making the arrest, as follows: 'I had a conversation in there at that second table. I asked the fellows for their cards, and one fellow said I could not have them. The defendants at that time were over by the round table. The room is, I should judge, 10 or 12 by 14 or 16. Both defendants were in this room. . . . I asked the fellows for their cards, and they said I could not have them, and I says, "Yes, I want them," and one fellow said, "Well, you can't have them, we are playing for 25 cents," and I said, "I can't help it. I want all the stuff," and he said "All right. You are an officer. We were just playing for fun," and gave me the cards. I heard other conversation in there.' It is claimed that it was error to receive this testimony without a showing that the defendants heard the conversation. Standing alone, this testimony would not sustain a conviction, but there is other evidence in the record showing that gambling games were going on in that room when the arrests were made and at other times. The defendants offered no testimony, and the uncontradicted testimony of the state clearly showed that gam-

bling was going on, and had been for a long time going on, in the room where this conversation took place. On this point there can be no question but that the verdict was amply sustained on this point by the evidence, and the evidence objected to had no bearing on the case, except as to whether gambling was permitted to be carried on in this room. The objection to the evidence is that it was hearsay so far as the defendants are concerned, as there is no showing that the defendants heard the coversation, and could not therefore be charged by their silence in having acquiesced in the statement that gambling was going on there. If the players had unequivocally stated that the game was being played for money, it may be doubted whether the admission of the evidence was prejudicial, in view of the size of the room and the circumstances under which the statements were made. But we need not dispose of the objection on that ground. The statement of the player, as narrated by the witness, cannot be said to show that the game was being played for money. Considered altogether, it required no statement from the defendants, and their silence became immaterial."

The true rule seems to be that an error in receiving incompetent evidence, if properly excepted to, can only be disregarded when it can be seen that it did no harm. If the evidence is slight or irrelevant, or if, without it, the fact is conclusively established by other evidence, it may be disregarded, because it could not have injured the other party.

Appellant assigns as error the following instruction of the court to the jury: "I instruct you, further, that certain exhibits have been introduced, being receipts for freight delivered or waybills, Where the testimony shows that said receipts or waybills were signed by the defendant, such exhibits may be considered by you as an admission by the defendant of the receipt of the goods as enumerated in said receipts or waybills. On the other hand, any of said exhibits or receipts which the testimony shows were not signed by the defendant, would not be binding upon the defendant,—would not be an admission by him of the receipt of the goods as enumerated in said bill or receipt." There is no error in this instruction. Under the ruling in the case of State v. Dahlquist, supra, the defendant is bound by receipts or waybills signed by him. There is no error in the refusal of

the court to give the instructions asked for by appellant.    See State v. Dahlquist, supra.

During his argument to the jury the state's attorney said in substance that the character of goods being handled by the defendant was shown by the written evidence, Exhibits D, C, E, F, and G, and that liquor was being received in such quantities that any reasonable man would be justified in assuming that it was for sale, and not for the private use of the man receiving it. Whereupon the following proceedings were had:

By Mr. Divet:

"The defendant objects and excepts to the statement of counsel in regard to the written evidence Exhibits D, C, E, F, and G, and the other exhibits known as freight bills or freight receipts, showing the character of the goods that were shipped to the defendant, upon the ground that the recitals in such exhibits are not evidence of the fact that the articles entered thereupon were as matter of fact the articles that were shipped or delivered, such exhibits being competent here, if at all, only for such bearing as they may have as admissions of the defendant, and the defendant asks the court to require counsel to discontinue the line of argument, and instruct the jury that recitals in such exhibits as to the character of the goods contained in the shipment are not evidence of the fact that the goods were of that character."

By Mr. Wolfe:

"Counsel for the state informs the court that he will keep strictly within the line that these admissions are not admissions against the defendant except where the defendant has attested them over his own signature."

"By the Court:

"That is just what I was going to suggest."

The exhibits signed by defendant are admissions against him; hence we cannot conceive how appellant can be prejudiced by these remarks, particularly as the state's attorney immediately stated that he would keep strictly within the line that these admissions are not admissions against the defendant except where he has attested them over his own

signature. The court committed no error in denying appellant's motion for a new trial.

The order appealed from is affirmed.

All concur, ELLSWORTH, J., concurring specially.

ELLSWORTH, J. (Concurring specially.) I concur in the result announced but not in the reasoning of that part of the opinion contained in these words: "With these exhibits out of the case the jury could have found no other verdict than the one found. The defendant offered no testimony and the uncontradicted testimony of the State aside from the exhibits complained of, clearly shows that the defendant is guilty of the offense charged in the information."

I deem it highly improbable that a jury acting upon evidence such as is shown by the record of this case would have found a verdict different from that rendered. Nevertheless, the jury was at full liberty if it saw fit to do so to render a verdict of not guilty and such verdict would have stood as conclusive of the fact of the defendant's guilt notwithstanding the apparent weight of the evidence. Therefore, it appears to me that we are not authorized to go further than to say that there was no reasonable probability of a different verdict.

There is no means known to the law of this State whereby a defendant in a criminal case can be held guilty of an offense charged against him except upon the verdict of a jury after a fair and impartial trial. It is not the province of this court to declare his guilt or to hold as a matter of law that the verdict of a jury could not be other than one of conviction. To reason or presume upon the probability of the action of a jury in such a case is the limit of our discretion.